IN RE the PATERNITY OF STEVEN J. S. and Jonathan M. S.:

STEVEN J. S and Jonathan M. S., Petitioners-Respondents,

v.

STEVEN M. S., Respondent-Appellant.

Court of Appeals

*No. 93–2484. Submitted on briefs February 22, 1994.—Decided March 29, 1994.*

(Also reported in 515 N.W.2d 719.)

On behalf of respondent-appellant, the cause was submitted on the brief of *Jeff P. Brinckman* of *Brinckman & Associates, S.C.* of La Crosse.

On behalf of petitioner-respondent Monroe County Child Support Agency/State of Wisconsin, the cause was submitted on the brief of *Kerry Sullivan-Flock* corporation counsel, of Sparta.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Steven M.S. appeals a trial court order determining his child support payments and arrearage. He argues that the court erroneously exercised its discretion by including wages paid to his present wife, Brenda, in his gross income. He also argues that the court erroneously exercised its discretion by extending the life of some of his assets, when the evidence showed his depreciation of these assets conformed to IRS standards and acceptable accounting methods.

We conclude that Steven's wife is not a dependent household member whose income may be included in Steven's income when determining his child support obligation. We further conclude that the period of time over which Steven depreciated some of his assets was not allowable under the Wisconsin Administrative Code. The court did not erroneously exercise its discretion by concluding that it would adhere to standard recovery periods for these assets. However, we remand on this issue to insure the court chose the proper recovery periods. We therefore affirm in part, reverse in part and remand with directions.

Steven S. fathered two children with Penny B. and was adjudged their father in 1986. The initial child support order was modified. A third order relieved him of his support obligation but required him to pay against an arrearage. Penny filed a motion to reimpose support, and a new support order was entered in August 1991. It set Steven's child support at $275 per month and determined an arrearage. Steven appealed this order and, in an unpublished opinion, we reversed. We concluded that the court erred by not articulating sufficient reasons for setting Steven's support obligation at $275 and not explaining how it reached the arrearage amount. We remanded on both issues.

On remand, the trial court recalculated Steven's child support and arrearage based on a determination of Steven's gross income. In calculating his gross income, the court included $7,366 Steven had paid to his present wife, Brenda, in 1992 as an employe of his logging operation. The court also reviewed Steven's income tax returns for the years 1989 through 1992 and extended the life of the assets listed there. The court found that Steven had depreciated certain business assets over a shorter recovery period than that

established by the Modified Accelerated Cost Recovery System (MACRS) depreciation tables issued by the Internal Revenue Service. The court increased the recovery period of these assets to conform to the MACRS tables. This had the effect of increasing his support obligation and arrearage. The court set Steven's child support at 25% of gross income or a minimum of $300 per month. Steven filed this appeal.

A child support order is within the trial court's discretion, and our review is limited to whether the court properly exercised its discretion. *In re Schwantes v. Schwantes*, 121 Wis. 2d 607, 630-31, 360 N.W.2d 69, 80 (Ct. App. 1984). The trial court properly exercises its discretion if it articulates its reasons, bases its decision on facts of record and the correct legal standards, and the award is neither excessive nor inadequate. *In re Haugan v. Haugan*, 117 Wis. 2d 200, 216, 343 N.W.2d 796, 804 (1984).

We conclude that the trial court did not properly apply the law when it included Brenda's income in Steven's gross income. The court properly recognized that under WIS. ADM. CODE § HSS 80.03(1), Steven's support is a percentage of the sum of his "gross income adjusted for child support" and his "imputed income for child support . . . ." Under § HSS 80.01(13), "[g]ross income adjusted for child support" is determined in part by taking the individual's gross income and "adding wages paid to dependent household members . . . ." A "[d]ependent household member" means "a person for whom a taxpayer is entitled to an exemption for the taxable year under 26 USC 151(e)." WIS. ADM. CODE § HSS 80.01(9). The court determined Steven was entitled to take an exemption for Brenda because she was a dependent and a member of his household. It

thus concluded that it could consider the wages paid to her by Steven in determining Steven's gross income adjusted for child support.

■

Brenda was not a dependent household member. As noted, the administrative code defines a dependent household member as a person for whom the taxpayer is entitled to an exemption under 26 U.S.C.A. § 151(e) (West Supp. 1993). A review of § 151 reveals there is no subsec. (e). However, prior to 1986, there was a § 151(e). In 1986, § 151(c) and (d) were deleted, and subsecs. (e) and (f) were renumbered (c) and (d). Pub. L. No. 99-514 § 103(b), 100 Stat. 2102. Thus, what was formerly § 151(e) is currently § 151(c). We conclude that the administrative code was mistakenly never corrected to reflect this change, and that it now means to define a dependent household member as a person for whom the taxpayer is entitled to an exemption under § 151(c).

26 U.S.C.A. § 151(c) (West Supp. 1993) allows the taxpayer "[a]n exemption of the exemption amount *for each dependent (as defined in section 152)*" when the dependent meets certain requirements.[1] (Emphasis added.) Section 152(a) defines "dependent." A taxpayer's spouse is not included in the list of relatives who may be considered the taxpayer's dependent. In fact, the code specifically excludes a spouse from the

---

[1] Under 26 U.S.C.A. § 151(c)(1) (West Supp. 1993), the exemption may be claimed for any dependent:

(A)   whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than the exemption amount, or

(B)   who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student who has not attained the age of 24 at the close of such calendar year.

definition of a dependent. Section 152(a)(9), the catch-all definition, provides that a dependent is an "individual (other than an individual who at any time during the taxable year was the spouse . . . of the taxpayer) who, for the taxable year of the taxpayer, has his principal place of abode the home of the taxpayer and is a member of the taxpayer's household."

Because Brenda was Steven's spouse in the tax year 1992, she could not possibly have been his dependent. Thus, Steven was not entitled to take an exemption for Brenda under 26 U.S.C.A. § 151(c) (West Supp. 1993), and she was not a dependent household member under WIS. ADM. CODE § HSS 80.01(9). The trial court erred by adding wages paid to her to Steven's gross adjusted income for child support under § HSS 80.01(13).

A court may, in some instances, consider wages a parent pays to a spouse in determining a child support obligation. In *In re Evjen v. Evjen*, 171 Wis. 2d 677, 684-86, 492 N.W.2d 361, 363-64 (Ct. App. 1992), we concluded that a trial court may include the wages an obligor parent pays to a spouse into the obligor parent's income if the court finds the wages were paid in attempt to bury the true income and thereby decrease the child support obligation. This power is consistent with the court's authority to include income diverted to avoid paying child support as imputed income for purposes of determining support under WIS. ADM. CODE §§ HSS 80.01(14) and 80.03(1). *Evjen*, 171 Wis. 2d at 686, 492 N.W.2d at 364. Here, however, the court did not, and on this record could not, make a finding that Steven paid Brenda wages in an attempt to bury his true income and avoid paying child support. As corporation counsel concedes, there is no testimony or

evidence in the record that would support such a finding.

■

We further conclude that the trial court did not erroneously exercise its discretion when it increased the recovery period over which certain assets were depreciated. The court increased the recovery period to conform to the values for assets listed in the MACRS depreciation tables. By increasing the recovery period of these assets, it decreased the value of the deductions Steven had taken for the depreciation of these assets. This had the effect of increasing Steven's gross income and, thus, his support obligation and arrearage. The court's reason for adhering to the MACRS tables was that it would be easier to administer. The court articulated its rationale on the record.[2] Its understanding is consistent with the applicable law.

Under WIS. ADM. CODE § HSS 80.01(13), the "[g]ross income adjusted for child support" includes "the excess of accelerated depreciation as determined under 26 USC 167, and 26 USC 168 over straight-line depreciation *allowable* under 26 USC 167 . . . ."

---

[2] The court explained during the hearing:

> I have a real problem with the accountants. One accountant says it's right, and one accountant says it's wrong. And I have to have something on which I can base my decisions from here on in.
>
> . . . .
>
> So I think I have to — I'm going to determine that I will use the rule that is down in black-and-white . . . the MACRS rule as to what the length of the depreciation will be.
>
> . . . And I think I have to follow that because, frankly, it gives me something on which I can always hang my hat.
>
> Because, you know, I can't say that one piece of equipment, a 1965 piece of equipment, is only going to last three years when, in the hands of a competent person, it will last ten years. And I would have to make the determination on whether the man is competent or not as a mechanic. And I can't — I don't think I can do that.

(Emphasis added.) Thus, Wisconsin's child support law allows a payer to use straight-line depreciation that is "allowable" under the Internal Revenue Code, but accelerated depreciation is not permissible. Steven used the straight-line method. However, the recovery periods he chose to depreciate certain assets were not "allowable" under the Internal Revenue Code.

Under 26 U.S.C.A. § 167(a) (West Supp. 1993), a taxpayer is allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business. Under § 168(a), the depreciation deduction for any tangible property "shall be determined by using . . . (2) the applicable recovery period . . . ." Steven's property is tangible property and is depreciated over the applicable recovery period. The applicable recovery period is determined by reference to the property's classification. 26 U.S.C.A. § 168(c) (West Supp. 1993). The property's classification is determined by reference to its class life. 26 U.S.C.A. § 168(e) (West Supp. 1993). Finally, class life is determined by reference to the MACRS tables.

Thus, for example, Steven's chain saws have a class life of six years under the MACRS tables because they are logging equipment used in the cutting of timber. Under 26 U.S.C.A. § 168(e) (West Supp. 1993), property with a class life of more than four but less than ten years is classified as five-year property, which under subsec. (c) has a recovery period of five years. Under § 168(a), a taxpayer "shall" use the applicable recovery period, and thus depreciating such assets over a shorter or longer period of time is not "allowable."

We therefore conclude that the trial court properly exercised its discretion by relying on the MACRS tables and making adjustments to the recovery periods on

Steven's tax returns. We nevertheless remand to the trial court to determine whether it properly applied the MACRS recovery periods to all the assets it changed. For example, the record reflects that the chain saws were changed from a three-year recovery period to a seven-year period even though the MACRS tables relied on by the court allow at most a six-year recovery period.[3]

In conclusion, the trial court erroneously exercised its discretion by including wages Steven paid to his wife in his gross income adjusted for child support. It did not erroneously exercise its discretion by changing the recovery period over which Steven's assets were depreciated to conform to the MACRS tables, but we nevertheless remand to insure it properly adhered to the recovery periods listed in those tables. Steven asks that we remand with directions to the court administrator to reassign this case to a different judge. We decline this invitation. *See State ex rel. Hubert v. Circuit Court*, 163 Wis. 2d 517, 471 N.W.2d 615 (Ct. App. 1991).

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.

---

[3] The accountant whose figures the court relied on testified:

There is a provision that would allow for some of the wood-cutting assets — I think there was a saw in that particular year. In checking the depreciation tables further, as we discussed awhile back, that could have been taken for five years.

For consistency, I took them for seven to coincide with all of the other.